IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHANIEL DAVIS, JR.,

        Plaintiff,

    v.

SAFEWAY, INC.,

        Defendant.

Case No. 3:24-cv-00455-AB

OPINION & ORDER

Ashley Renee Cadotte
Sean J. Riddell
2905 NE Broadway Street
Portland, OR 97232

      Attorneys for Plaintiff

Brian B. Williams
James L. Hiller
Alison Rachel Barber
Hitt Hiller Monfils Williams LLP
411 SW Second Ave. Suite 400
Portland, OR 97204

      Attorneys for Defendant

1 – OPINION & ORDER

**BAGGIO, District Judge:**

Plaintiff Nathaniel Davis, Jr. brings a claim for race discrimination under Oregon Revised Statute § ("ORS") 659A.403 and a related negligent supervision and retention claim against Defendant Safeway, Inc. Notice of Removal Ex. 1 ("Compl.") ¶¶ 13–20, ECF No. 1-1. Defendant moves for summary judgment. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 23. The Court held oral argument on February 27, 2026. For the following reasons, the Court denies Defendant's Motion for Summary Judgment.

## BACKGROUND

On January 10, 2024, Plaintiff's wife ordered home delivery from Defendant through the delivery service Instacart. Compl. ¶ 3; Riddell Decl. ¶ 3 ("Davis Dep.") 74:7–23,[1] ECF No. 31. When the order arrived, Plaintiff believed some of the items were overpriced. Davis Dep. 75:7–16. Plaintiff called Defendant's store, and Plaintiff was told that he could execute a return by bringing the items and the receipt to the store. Davis Decl. ¶ 2, ECF No. 32.

The following day, Plaintiff, an African-American man, went to Defendant's store. Compl. ¶¶ 2, 5. Plaintiff went to the customer service counter and was assisted by Defendant's employee Christopher Grail. Davis Dep. 79:14–80:16. Roughly thirty seconds after Mr. Grail began to assist Plaintiff, another one of Defendant's employees—Ashley Cutlip—walked over to the customer service counter. Hiller Decl. Ex. 1 ("Video") 00:21–00:48 (Mr. Grail assisting), ECF No. 24-1;[2] *id.* at 00:48 (Ms. Cutlip approaching Plaintiff). Ms. Cutlip "told [Plaintiff that

---

[1] Plaintiff's counsel included excerpts of depositions in the same document as counsel's declaration rather than as separate exhibits. Riddell Decl. ¶ 3. The Court will cite these depositions as falling under paragraph three of counsel's declaration in the first instance of their citation but will use deposition transcript page and line numbers for pincites. In subsequent citations, the Court will only use deposition transcript page and line numbers.

[2] The video was provided to the Court via USB drive. The video does not have audio. Hiller Decl. ¶ 2, ECF No. 24.

2 – OPINION & ORDER

he] was 86ed from the store." Davis Dep. 81:9; Riddell Decl. ¶ 3 ("Grail Dep.") 25:20–25, ECF

No. 31. Plaintiff responded, "I'm sorry, you have me mistaken. All Black people don't look the

same[,]" Davis Dep. 81:18–19, and "I don't look like every effing Black man out there[,]" Grail

Dep. 26:4–5, 27:25; *see also* Cutlip Decl. ¶ 5, ECF No. 26. Ms. Cutlip conceded that she mistook

Plaintiff's identity, Cutlip Decl. ¶ 4, and "decided that [her] presence was not helpful[,]" *id.* ¶ 6.

Ms. Cutlip then left the customer service counter, stating "[y]ou played the race card. I don't

want to have any interaction with you." *Id.* The interaction between Ms. Cutlip and Plaintiff

lasted for about forty-five seconds. *See* Video 00:48–01:34.

Following Ms. Cutlip's departure from the customer service counter, Mr. Grail and

Plaintiff resumed their interaction.[3] According to Plaintiff, Mr. Grail's "communication kind of

became reaction [sic], because he kept telling me I was playing the race card. He repeated that to

me, like, three times. I was playing the race card. He told me he was no longer helping me

because I was playing the race card." Davis Dep. 87:5–9. In Mr. Grail's perspective, Mr. Grail

"spent the better part of fifteen minutes trying to figure out how to execute this return, and was

unable to figure this out that evening. [Mr. Grail has] since learned that Instacart returns have to

be done directly through Instacart [and] that is why [Mr. Grail] could not execute the return."

Grail Decl. ¶ 4, ECF No. 25. Mr. Grail told Plaintiff that "[Plaintiff] should contact the store

manager the following day for the return." *Id.* ¶ 5.

---

[3] A few minutes later, Ms. Cutlip returns to the customer service counter for roughly twelve seconds while Mr. Grail is interacting with Plaintiff. Video 03:52–04:04. Plaintiff mentions that "[Ms. Cutlip] came back in[,]" Hiller Decl. Ex. 2, 86:19–20, ECF No. 24-2, and that she "came over and said something again[,]" Davis Dep. 87:10. Plaintiff's counsel poses a deposition question to Mr. Grail about Ms. Cutlip's brief return to the customer service counter, but Mr. Grail's response is not included in Plaintiff's excerpts of the deposition. *See* Grail Dep. 52:23–25.

3 – OPINION & ORDER

The day after the incident, Plaintiff filed a complaint with Defendant over the phone. Davis Dep. 92:2–6. Plaintiff did not return to the store to further pursue the return. Davis Dep. 93:3–8.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive

4 – OPINION & ORDER

evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Defendant moves for summary judgment on all claims, arguing that Plaintiff cannot show that race was the reason he could not receive a refund. Def.'s Mot. 6, 8. Plaintiff counters that Defendant refused service to Plaintiff on account of his race. Pl.'s Resp. Def.'s Mot. ("Pl.'s Resp.") 13, ECF No. 29. Plaintiff also objects to portions of Defendant's evidence and requests an adverse inference sanction for evidence spoliation. *Id.* at 4–5, 14–15. Defendant in turn objects to portions of Plaintiff's evidence. Def.'s Reply 6–7, ECF No. 33. The Court finds a question of material fact precludes summary judgment; the Court does not reach the evidentiary issues because the Court does not rely upon the contested evidence.

**I.      ORS 659A.403**

ORS 659A.403(1) provides, in relevant part, that "all persons within the jurisdiction of this state are entitled to the full and equal accommodations . . . of any place of public accommodation, without any distinction, discrimination or restriction on account of race . . . ." Subsection (3) of the statute in turn provides that it is unlawful to "deny full and equal accommodations . . . ." ORS 659A.403(3).

To analyze claims brought under this state statute, federal courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See, e.g.*, *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1089 (D. Or. 2018) (applying *McDonnell Douglas* to claims arising under ORS 659A.403); *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1093 (D. Or. 2020) (same). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell*

*Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to prove it had a "legitimate, nondiscriminatory reason" for the adverse action. *Id.* The plaintiff may then rebut by showing the allegedly legitimate reason was mere pretext for intentional discrimination. *Id.* at 804.

A.    Prima Facie Case

"To state a prima facie case of racial discrimination under O.R.S. 659A.403, Plaintiff must establish that he was treated unequally because of his race and that he has been injured as a result." *Clark*, 478 F. Supp. 3d at 1093. "Plaintiff must at least produce circumstantial evidence of Defendant's discriminatory intent[,]" *id.*, but the level of proof required to state a prima facie case at the summary judgment stage "is 'minimal and does not even need to rise to the level of a preponderance of the evidence[,]'" *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)).

Here, Plaintiff asserts that Mr. Grail "kept telling [Plaintiff that he] was playing the race card [and that Mr. Grail] was no longer helping [Plaintiff] because [Plaintiff] was playing the race card." Davis Dep. 87:5–9. Mr. Grail denies this, declaring "[a]t no time did I ever use the words 'race card' and Ms. Cutlip only used those words the one time." Grail Decl. ¶ 11. However, in deposition testimony, Mr. Grail appears to suggest that Plaintiff's broaching of race did affect his willingness to serve Plaintiff:

> [Plaintiff] said [he does not] look like every effing Black man out there. And that's when [Ms. Cutlip] threw up her hands and went oh, you're playing the race card. And [Ms. Cutlip] walked back to a checkstand to help bag and let me deal with the situation. [Plaintiff] was pretty heated about that, of course, which I totally—is reasonable, I guess. *And then stopped me from wanting to help him with the refund at all.*

Grail Dep. 26:4–11 (emphasis added). The Court acknowledges the fragmented murkiness of the final sentence; however, in summary judgment posture, the Court draws all inferences in favor of nonmoving Plaintiff. The Court thus finds that the final sentence of this deposition excerpt creates a question of material fact as to whether Mr. Grail's disinterest in helping Plaintiff stemmed from Plaintiff's lack of cooperation or from Plaintiff playing the "race card." This dispute of material fact precludes summary judgment on Plaintiff's prima facie case.

Defendant argues that Plaintiff's case hinges on an instance of mistaken identity and that this District has previously found mistaken identity insufficient to show discriminatory intent. Def.'s Mot. 6; *see Mikes v. Albertsons Co., LLC*, No. 3:17-cv-01400-JR, 2019 WL 2251821 (D. Or. Apr. 10, 2019), *report and recommendation adopted*, 2019 WL 2250579 (D. Or. May 24, 2019). In *Mikes*, a store employee mistook the plaintiff and her companion as the same pair of customers who had previously been accused of shoplifting and asked not to return. *Id.* at *1. The defendant store argued that "misidentification . . . does not demonstrate the requisite level of racial animus . . . ." *Id.* at *2. The court agreed and found the plaintiff's declaration asserting racial animus to be insufficient to state a prima facie claim.[4] *Id.* Defendant argues that *Mikes* resolves the instant case, but the Court disagrees. The dispute of fact here does not turn on the mistaken identity. Rather, it is Defendant's reaction to the mistaken identity—whether Defendant was disinclined to assist Plaintiff because he "played the race card"—that precludes summary judgment on Plaintiff's prima facie case.

//

---

[4] The *Mikes* court conducted this analysis under the plaintiff's 42 U.S.C. § 1981 claim, but the Court referenced its § 1981 analysis to resolve the plaintiff's ORS 659A.403 claim. *Mikes*, 2019 WL 2251821, at *3; *see also Williams v. Thant Co.*, No. 02–1214–MO, 2004 WL 1397554, at *2 (D. Or. June 22, 2004) ("[T]he same elements required for a Section 1981 claim apply to . . . claims asserted under . . . ORS 659A.403.").

7 – OPINION & ORDER

B.    Nondiscriminatory Reasons and Pretext

Having found that Plaintiff has established a prima facie case, the Court must evaluate the remaining two prongs of the *McDonnell Douglas* test. *Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (rejecting the "Oregon rule" in which establishing a prima facie case is *sufficient* to defeat summary judgment on a discrimination claim and holding instead that federal courts "must . . . examine the evidence tendered on summary judgment beyond the prima facie case in accordance with *McDonnell Douglas*' burden-shifting model"). Under *McDonnell Douglas*, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may then rebut by showing the allegedly legitimate reason was merely pretextual. *Id.* at 804.

Neither party explicitly briefed the nondiscriminatory reason or pretext steps of the *McDonnell Douglas* framework. The Court credits Defendant as putting forth a non-discriminatory reason for Mr. Grail's ultimate inability to perform the return: Plaintiff had made the purchase via Instacart, Mr. Grail could not execute an Instacart return, and only later did Mr. Grail learn that "Instacart returns have to be done directly through Instacart . . . ." Grail Decl. ¶¶ 3–4. However, this is not responsive to the material fact question above. In other words, whether or not Mr. Grail could have performed the return is a secondary question. The antecedent question is whether Mr. Grail refused or was otherwise disinclined to assist Plaintiff with his return because of his race, as potentially suggested by Mr. Grail's deposition testimony. Since there is a dispute of material fact on that question, it is of no help to Defendant that, after the incident, Mr. Grail learned the return was not executable because it was an Instacart purchase.

8 – OPINION & ORDER

In sum, the Court finds an issue of material fact at the prima facie step. Plaintiff claims that Defendant's employee told Plaintiff that the employee was no longer helping Plaintiff because Plaintiff played the race card. Defendant's employee disputes this contention in his declaration, but his deposition testimony is potentially contradictory. Finally, Defendant's nondiscriminatory reason is not responsive to this fact question.

## II.    Evidentiary Objections

Plaintiff objects to paragraphs eight and nine of Ms. Cutlip's declaration, arguing the paragraphs are not relevant and are improper character evidence under Federal Rules of Evidence 401 and 404. Pl.'s Resp. 4–5. In turn, Defendant challenges Plaintiff's introduction of content from Mr. Grail's Facebook on similar relevance and character grounds. Def.'s Reply 6. Because the Court does not rely on the evidence targeted by these objections, the Court declines to reach the merits at this juncture. *See, e.g.*, *Wilson v. J.P. Allen Co.*, 57 F. Supp. 3d 1249, 1261 n.9 (C.D. Cal. 2014) (denying defendant's motion for summary judgment and "not reach[ing] defendant's other evidentiary objections because the Court does not rely on the objected-to evidence").

Separately, Plaintiff argues that Defendant's failure to preserve Mr. Grail's contemporaneous handwritten notes warrants an adverse inference for evidence spoliation. Pl.'s Resp. 14–15. Because the Court did not consider this evidence or lack thereof, it leaves this issue for pretrial litigation. *See Fritch v. Orion Manufactured Hous. Specialists Inc.*, No. CV-21-00509-TUC-JGZ (JR), 2023 WL 3643741, at *3 n.2 (D. Ariz. May 25, 2023) (denying summary judgment and declining to consider objections to evidence not relied upon by the court because "[t]hese evidentiary and spoliation issues are best left for resolution by pretrial motions"); *see also Ingram v. Pac. Gas & Elec. Co.*, 690 Fed. Appx. 527, 530 (9th Cir. 2017) ("Since adverse

9 – OPINION & ORDER

inference instructions are provided to juries at the conclusion of trial, the district court did not abuse its discretion by denying [the plaintiff's] request for an adverse inference at the summary judgment stage of these proceedings.").

## CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment [23].

IT IS SO ORDERED.

DATED this _12th_ day of March, 2026.

_Amy M. Baggio_
AMY M. BAGGIO
United States District Judge

10 – OPINION & ORDER